UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

OVEREND TECHNOLOGIES, LLC,

        Plaintiff,

v.                                                             Case No. 05-C-0800

INVISTA S.ÀR.L., *et al.*,

        Defendants.

---

**AMENDED MEMORANDUM AND ORDER[1]**

---

      Plaintiff OverEnd Technologies, LLC, sued Defendant Invista S.àr.l., seeking a declaratory judgment of non-infringement and invalidity of U.S. Patent No. 6,676,054 ("the '054 patent"). OverEnd also alleged, in the third count of its original complaint, that Invista violated § 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, by lessening competition in the market for over-end takeoff (OETO) devices used in the disposable diaper industry. On November 8, 2005, OverEnd filed an amended complaint, which repeated the allegations of the original complaint and added allegations that Invista had conspired with Defendants Invista North America S.àr.l. and Accratec Engineering, Inc., to violated §1 and § 2 of the Sherman Act. Defendants have moved to dismiss all the Sherman Act claims. For the following reasons, their motions will be denied.

---

[1] The Memorandum and Order has been amended to include the docket number for Accratec's motion, which was inadvertently omitted from the original, as having been denied and to correct several misspellings.

**FACTS**

In considering a motion to dismiss, the court accepts all the facts pled in the complaint as true and draws all reasonable inferences from those facts in the light most favorable to the plaintiff. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). Around 1997 or 1998, "Diaper Producer A," which is not a party to this case, developed an OETO device for use in its manufacturing processes. (Am. Compl. ¶ 12.) Between 1999 and 2001, Accratec performed testing using this device, and eventually developed an OETO device of its own that was based on and substantially similar to Diaper Producer A's device. (Am. Compl. ¶¶ 13-17.) On March 23, 2001, Accratec applied for a patent on its device. (Am. Compl.¶ 19.) Accratec subsequently assigned its rights in the patent to E.I. du Pont de Nemours & Company, Invista's then-parent. Du Pont filed subsequent patent applications relating to the OETO device, but concealed from the Patent and Trademark Office its knowledge of prior art, including both Diaper Producer A's device and a device developed by du Pont in association with A. Smid Consulting A.S.C., another non-party. (Am. Compl. ¶¶ 23-25.) The patent ultimately issued as the '054 patent, which du Pont reassigned to Invista. (Am. Compl. ¶¶ 21, 26-28.) Invista granted an exclusive license to manufacture and to sell the patented device to Accratec. (Am. Compl. ¶ 31.)

OverEnd further alleges that it developed its own, non-infringing OETO device in 2004. (Am. Compl. ¶ 32.) However, when OverEnd tried to show and sell its device at a Swiss trade show in April 2005, Invista used the '054 patent to obtain an injunction that prevented OverEnd from doing so. (Am. Compl. ¶¶ 33-38.) Invista currently maintains a 70% to 80% share of the market for OETO devices used in the domestic disposable diaper manufacturing industry, and has maintained or expanded that market share by advising potential purchasers of OETO devices that

it owns all patent rights to OETO devices and will vigorously enforce them. (Am. Compl. ¶¶ 39-40.)

OverEnd alleges five causes of action arising out of these facts. In Count I, it seeks a declaration of non-infringement of the '054 patent. In Count II, its seeks a declaration that the '054 patent is invalid and unenforceable because the co-inventors and/or Invista committed fraud on the PTO by failing to name the proper inventors of the device, failing to disclose that other devices were in use more than one year before the invention, and failing to list the other devices as prior art.[2] In Count III, OverEnd alleges that Invista and Accratec have conspired to restrain trade in OETO devices used in the domestic disposable diaper industry by fraudulently obtaining the '054 patent, entering into an exclusive licensing agreement, and enforcing the monopoly granted by the fraudulently-obtained '054 patent through actual and threatened judicial and extra-judicial means, in violation of § 1 of the Sherman Antitrust Act. Count IV alleges that as a result of the actions identified in Count III, defendants "have in fact monopolized, have attempted to monopolize, and/or possess a dangerous probability that they will monopolize the market for OETO devices used by the disposable diaper manufacturing industry for the unwinding of as-spun elastomeric fibers, thereby damaging said market generally, and OverEnd specifically," in violation of § 2 of the Sherman Act. (Am. Compl. ¶ 51.) Count V reprises the allegations of Count IV against Invista alone. Defendants have moved to dismiss Counts III-V.

**DISCUSSION**

As a preliminary matter, Invista points out that OverEnd's amended complaint, because it added new defendants as parties, required leave of the court. *Moore v. State of Indiana*, 999 F.2d

---

[2]OverEnd alleges these failures to disclose both as fraud and as inadvertent failures.

1125, 1128 (7th Cir. 1993). However, no party has moved to strike the amended complaint or argued that prejudice will result from its allowance. Accordingly, the court will grant OverEnd leave to file its amended complaint and will address the defendants' motions to dismiss on their merits.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Dismissal of an action on such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Fed. R. Civ. P. 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not require every element of a legal theory to be set forth specifically, *Scott*, 195 F.3d at 951, nor does it require pleading of all the facts that would establish that a claim was valid. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Conclusions or vague language are acceptable so long as a defendant can understand the claim. *Muick v. Glenayre Elecs.*, 280 F.3d 741, 744 (7th Cir. 2002). "All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs*, 286 F.3d at 439. "[A] failure of proof is not a failure to state a claim." *Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002). A plaintiff "may hypothesize any set of facts consistent with the complaint that shows that the complaint states a claim." *Id.*

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Section 2 of the Sherman Act prohibits any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Private

4

parties injured by violations of these sections may sue under § 4 of the Clayton Act, 15 U.S.C. § 15, for triple damages and costs of suit, including attorney's fees.

In order to prevail on its claim under § 1 of the Sherman Act, OverEnd must show "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *MCM Partners Inc. v. Andrews-Bartlett & Assoc., Inc.*, 161 F.3d 443, 448 (7th Cir. 1998) (quoting *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1220 (7th Cir. 1993)). Regarding its claim for monopolization under § 2 of the Sherman Act, OverEnd must show "(1) monopoly power in a defined, relevant market and (2) willfully acquired or maintained monopoly power, as distinguished from growth or development due to superior product or business acumen." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966); *see also Endsley v. City of Chicago*, 230 F.3d 276, 281 (7th Cir. 2000) (citing *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 481 (1992)).

The mere fact that a defendant owns a patent does not give rise to an antitrust claim because the very purpose of a patent is to give the holder a limited monopoly on the claimed invention. *See, e.g., United States v. Line Material Co.*, 333 U.S. 287, 309 (1948) ("The Sherman Act was enacted to prevent restraints of commerce but has been interpreted as recognizing that patent grants were an exception.") However, when a party fraudulently obtains a patent and uses that patent to monopolize a field, injured parties may sue for violations of the Sherman Act. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965) ("[E]nforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present.").

5

Defendants first argue that the antitrust claims must be dismissed because OverEnd has failed to plead "facts explaining why the market alleged is the relevant and economically significant product market, including facts regarding the players in the market and substitute products, distinguishing among comparable products, and relating to cross-elasticity of demand." (Invista Br. at 1-2.) While other circuits have in some instances imposed heightened pleading requirements to antitrust complaints, the Seventh Circuit has resisted attempts to do so. *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 976-977 (7th Cir. 1995) ("[A]n antitrust plaintiff need not include the particulars of his claim to survive a motion to dismiss. It is instead sufficient for the plaintiff to include in its complaint only a short and plain statement of the claim showing an entitlement to relief.") (internal citations omitted); *see also Tierney v. Vahle*, 304 F.3d 734, 742 (7th Cir. 2002) ("[T]here are no heightened rules of pleading a federal case besides those listed in Fed. R. Civ. P. 9."). OverEnd's complaint need not explain *why* the market alleged is the relevant market. *Cf. MCM Partners*, 62 F.3d at 977 ("[I]t is not inconceivable to us that MCM could prove a set of facts supporting the relevant market definition alleged in its complaint. . . . It was therefore erroneous for the district court also to dismiss MCM's section 1 claim on this ground."). Nor does the fact that the potential market "might be worldwide" (Accratec Br. at 2) mandate dismissal of the complaint; this court may not look behind OverEnd's allegations to speculate on the plausibility of its market definition. *Id.* at 976.

Defendants next argue that OverEnd has failed to plead an "antitrust injury" as the Supreme Court has defined that term. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) (holding that antitrust injury must stem from reduced competition, as opposed to continued or increased competition). The Seventh Circuit specifically rejected the notion that a complaint must plead facts showing an antitrust injury in *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 782

6

(7th Cir. 1994), although it acknowledged that a prolix complaint may clearly show a lack of antitrust injury, thereby warranting dismissal. *Id.* OverEnd has not pled itself out of a claim here. It is certainly conceivable that OverEnd could prove facts consistent with the allegations of the complaint that would amount to an antitrust injury as defined in *Brunswick* and its progeny. OverEnd alleges that defendants control roughly three-quarters of the market for OETO devices and are using a fraudulently-obtained patent to force competitors out of business and to inhibit others from entering the field. Such behavior could lead to reduced competition, decreased innovation, and higher prices to consumers of OETO devices. These are the evils that antitrust laws are designed to prevent. *Cf. James Cape & Sons Co. v. PCC Constr. Co.*, 2005 WL 2176965 (E.D. Wis. Sept. 6, 2005) (dismissing complaint because alleged conspiracy by defendants to use inside information to undercut plaintiff's bids on highway construction contracts did not lead to antitrust injury); *Phillips Getschow Co. v. Green Bay Brown County Professional Football Stadium Dist.*, 270 F. Supp. 2d 1043 (E.D. Wis. 2003) (dismissing complaint because alleged scheme wherein defendants allowed some contractors to submit second bids, undercutting plaintiff's sealed bids, did not lead to antitrust injury).

Defendants finally argue that insofar as Counts III-V of the complaint rely on fraud perpetrated on the patent office, they have not been pled with the particularity required by Fed. R. Civ. P. 9(b). *See Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005) ("Like all fraud-based claims, *Walker Process* allegations are subject to the pleading requirements of Fed. R. Civ. P. 9(b)."). Rule 9(b) requires a plaintiff alleging fraud to identify "the who, what, where, when and how," *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), of the acts constituting the fraud. OverEnd has done so here. It alleges that Accratec and du Pont committed fraud by submitting patent applications to the PTO on March 23, 2001, and March 19, 2002, which identified

7

Heaney, Graverson and Hicks of Accratec, and Martin of du Pont/Invista, as co-inventors of an OETO device that was actually invented by one or more employees of Diaper Producer A. In the applications and in subsequent communication with the PTO, du Pont and the purported inventors concealed from the PTO the true identities of the inventors, the existence of prior art in the form of Diaper Producer A's and A. Smid's OETO devices, and the fact that these devices had been in public use for more than one year prior to the filing of the first application. These allegations provide the who, what, where, when and how of the alleged fraud with enough specificity to satisfy Rule 9(b).

## CONCLUSION

OverEnd has adequately pled violations of the Sherman Act in Counts III-V of its amended complaint. Defendants' motions to dismiss (Docket #15, #21, and #23) will therefore be **DENIED.** Defendants shall file their responses to plaintiff's complaint within twenty days, and the clerk shall set this matter on for a telephone scheduling conference to address plaintiff's recently filed motion.

**SO ORDERED.**

Dated this   9th   day of February, 2006.

  s/ William C. Griesbach  
William C. Griesbach  
United States District Judge